UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

DALE ROBERT MYERS,

            Plaintiff,                                     Case No. 2:15-cv-123

v.                                                HON. TIMOTHY P. GREELEY

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF
SOCIAL SECURITY,

            Defendant.

_____/

**OPINION & ORDER**

Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act on August 3, 2012. ECF No. 8-2 at 23; PageID.54. Plaintiff also protectively filed a Title XVI application for supplemental security income on August 3, 2012. ECF No. 8-2 at 23; PageID.54. Plaintiff alleges that he became disabled on April 15, 2012. ECF No. 8-2 at 23; PageID.54. On October 22, 2012, both of Plaintiff's applications were denied, and on November 27, 2012, Plaintiff filed a written request for an administrative hearing before an Administrative Law Judge (ALJ). ECF No. 8-2 at 23; PageID.54. The ALJ held a video hearing on March 21, 2014. ECF No. 8-2 at 23; PageID.54. At the hearing, Plaintiff was represented by counsel. ECF No. 8-2 at 23; PageID.54. Testifying at the hearing were Plaintiff and vocational expert David Ostwald. ECF No. 8-2 at 23; PageID.54. In a decision issued April 25, 2014, the ALJ denied Plaintiff's claim for benefits. ECF No. 8-2 at 23; PageID.54. Plaintiff appealed to the Appeals Council, which denied his request for review on July 9, 2015. ECF No. 8-2 at 2;

PageID.33.  Plaintiff then filed this action on September 9, 2015.[1]  ECF No. 1.

Plaintiff suffers from diabetes, hypertension, and pain in both his left shoulder and right knee.  ECF No. 8-2 at 25; PageID.56.  At his hearing, Plaintiff testified that he delivers 125 advertisements on behalf of the Daily Newspaper once a week, by foot, over a period of two hours.  ECF No. 8-2 at 48-49; PageID.79-80.  He indicated that he stops about three times during his route because he loses his breath.  ECF No. 8-2 at 49; PageID.80.  Plaintiff testified that he can do the dishes, grocery shop, walk about a mile, and prepare his own meals.  ECF No. 8-2 at 47-48; PageID.78-79.  He stated that he takes medication for his diabetes, and that physical therapy helped his shoulder pain.  ECF No. 8-2 at 44-45; PageID.75-76.  Plaintiff testified that he has dizzy spells once every other month and that he has callouses on his feet, which prevent him from working.  ECF No. 8-2 at 45-46; PageID.76-77.

Vocational Expert David Ostwald testified at the hearing.  He stated that Plaintiff's past relevant work included the following positions: security guard (skill level 3, semi-skilled work, light exertional level); newspaper deliverer (skill level 2, unskilled, and light work); retail sales clerk (level 3, semi-skilled, and light work); and stock clerk (level 4, semi-skilled, and medium to heavy work).  ECF No. 8-2 at 61; PageID.92.

The ALJ then asked Mr. Ostwald to evaluate Plaintiff's ability to perform his past relevant work based on several different hypotheticals.  ECF No. 8-2 at 60-64; PageID.91-95.  The first hypothetical asked whether a person of Plaintiff's age, education, and skills that had the following limitations would be able to perform any job at the medium exertional level: not be close to hazards such as moving machinery or unprotected heights; and require the option to

---

[1]Both parties consented to proceed before a Magistrate Judge on December 2, 2015. ECF No. 9.

alternate between sitting and standing, with standing two hours at a time, walking two hours at a time, and sitting would be unrestricted. ECF No. 8-2 at 61-62; PageID.92-93.  Mr. Ostwald stated that this person could perform his past work as a store clerk as generally performed, but he could not perform his past work as a security guard or regional sales clerk.[2]  ECF No. 8-2 at 62; PageID.93.  However, Plaintiff could perform work as a cook helper (4,000 to 4,500 jobs in Michigan); an industrial cleaner (35,000 to 40,000 in Michigan); and a kitchen helper (5,000 to 6,000 jobs in Michigan).  ECF No. 8-2 at 63; PageID.94.  The ALJ then asked whether this same hypothetical person with an exertional level of sedentary would be able to perform any of Plaintiff's past relevant work.  ECF No. 8-2 at 64; PageID.95.  Mr. Ostwald stated that this condition would rule out all of Plaintiff's past relevant work.  ECF No. 8-2 at 64; PageID.95.  Finally, the ALJ asked whether this same individual with the additional limitation of being off-task twenty-percent of the work day would be able to perform any work.  ECF No. 8-2 at 64; PageID.95.  Mr. Ostwald indicated there would be no competitive employment for this individual.  ECF No. 8-2 at 64; PageID.95.

Plaintiff's attorney then asked Mr. Ostwald whether the same hypothetical individual, with the additional limitation that he would miss two or more workdays a month, would have any competitive employment available to him.  ECF No. 8-2 at 64; PageID.95.  Mr. Ostwald said there would be no competitive employment for this individual.  ECF No. 8-2 at 64; PageID.95.

---

[2]Notably, however, when asked whether the same hypothetical person with an exertional level of light (instead of medium) would be able to perform any of Plaintiff's past relevant work, Mr. Ostwald stated that this person *would* be able to perform Plaintiff's past work as a security guard. PageID.95. The Court finds it confusing that Mr. Ostwald would conclude that a person capable of medium exertional work would not be able to perform work as a security guard, but a person capable of light exertional work can. PageID.93.

The ALJ determined that Plaintiff suffers from diabetes mellitus, hypertension, degenerative changes of the left shoulder, and medial joint space narrowing in the right knee. ECF No. 8-2 at 25; PageID.56. Based on these conditions and the ALJ's determination of Plaintiff's physical capabilities, the ALJ concluded that Plaintiff could perform his past relevant work as a store clerk as actually performed at the medium exertional level. ECF No. 8-2 at 29; PageID.60.

Plaintiff filed an appeal on September 9, 2015 (ECF No. 1), alleging that the ALJ's decision to deny social security benefits to Plaintiff was improper. ECF No. 11. Defendant Commissioner of Social Security filed a response on January 11, 2016. ECF No. 12. Plaintiff has not filed a reply. The matter is now ready for a decision.

"Our review of the ALJ's decision is limited to whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Winslow v. Comm'r of Soc. Sec.*, 566 Fed. App'x 418, 420 (6th Cir. 2014) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)); *see also* 42 U.S.C. § 405(g). The findings of the ALJ are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as more than a mere scintilla of evidence but "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Jones v. Sec'y, Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). This Court is not permitted to try the case *de novo*, nor resolve conflicts in the evidence and cannot decide questions of credibility. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *see Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (noting the ALJ's decision cannot be overturned if sufficient evidence supports the decision regardless of

whether evidence also supports a contradictory conclusion).  This Court is required to examine the administrative record as a whole and affirm the Commissioner's decision if it is supported by substantial evidence, even if this Court would have decided the matter differently.  *See Kinsella v. Schwikers*, 708 F.2d 1058, 1059 (6th Cir. 1983); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (holding that the court must affirm a Commissioner even if substantial evidence would support the opposite conclusion).

The ALJ must employ a five-step sequential analysis to determine if Plaintiff is under a disability as defined by the Social Security Act.  *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).  If the ALJ determines Plaintiff is or is not disabled under a step, the analysis ceases and Plaintiff is declared as such.  20 C.F.R. § 404.1520(a).  Steps four and five use the residual functional capacity assessment in evaluating the claim.  *Id.*

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 15, 2012, the alleged onset date.  ECF No. 8-2 at 25; PageID.56.  At step two, the ALJ determined Plaintiff has the following severe impairments: diabetes mellitus, hypertension, degenerative changes of the left shoulder, and medial joint space narrowing in the right knee.  ECF No. 8-2 at 25; PageID.56.  At step three, the ALJ determined Plaintiff's impairments or a combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. part 404, Subpart P, Appendix 1.  ECF No. 8-2 at 26; PageID.57.  At step four, the ALJ determined Plaintiff has the residual functional capacity (RFC) to perform medium work, as defined in 20 C.F.R. § 404.1567(c), with the additional limitations of: having the option to alternate between sitting and standing (such that sitting is unrestricted, standing is limited to two hours at a time, and walking is limited to two hours at a time), and he

must avoid hazards such as moving machinery or unprotected heights.  ECF No. 8-2 at 26-28; PageID.57-59.  At step five, the ALJ concluded that Plaintiff could perform his past relevant work as a store clerk since that work "does not require the performance of work-related activities precluded by the claimant's residual functional capacity."  ECF No. 8-2 at 29; PageID.60. Therefore, the ALJ held that Plaintiff was not disabled during the time period from his alleged onset date through his date last insured. ECF No. 8-2 at 29; PageID.60.

In Plaintiff's initial brief, he claims that the following findings by the ALJ are not supported by substantial evidence: (1) the RFC determination; (2) the credibility finding; and (3) the Step 4 determination.  ECF No. 11.  Upon review of the evidence of record, this Court affirms the ALJ's conclusions.

Plaintiff claims that the ALJ's RFC finding that Plaintiff can perform a reduced range of medium work is improper because it is not supported by substantial evidence.  ECF No. 11 at 8-10; PageID.390-392.  Specifically, Plaintiff claims that the RFC finding is inaccurate because (1) it does not account for the pain in his left shoulder and right knee, (2) the ALJ should have ordered additional testing to further develop the record, and (3) the ALJ afforded insufficient weight to Plaintiff's treating physician's opinion (Physician Assistant (PA) Benkley). ECF No. 11 at 8-10; PageID.390-392 (citing *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983) (noting an ALJ has a "basic obligation to develop a full and fair record.")).

An RFC finding is what a person is able to do despite his or her limitations. SSR 96-8p, 1996 WL 374184, at *1 (noting an RFC is not the *least* a person can do, but rather the *most* a person can do).  In making an RFC determination, the ALJ must consider "only functional

limitations and restrictions that result from an individual's *medically determinable impairment* or combination of impairments, including the impact of any related symptoms."   SSR 96-8p, 1996 WL 374184, at *1 (emphasis added).   The claimant "ha[s] the burden of producing evidence to establish [his] residual functional capacity." *Combs v. Comm'r of Soc. Sec.*, 21 Fed. App'x 289, 290 (6th Cir. 2001) (citing *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391-92 (6th Cir. 1999)); *see Bowen v. Yukert*, 482 U.S. 137, 146 n.5 (1987) ("It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so.").   Only after Plaintiff has fulfilled his burden of providing sufficient evidence to show that he cannot perform his past work does the burden shift to the Commissioner to "show that a significant number of jobs" were still available to him.  *Combs*, 21 Fed. App'x at 290; *see also Bowen*, 482 U.S. at 146 n.5 ("[T]he Secretary is required to bear this burden only if the sequential evaluation process proceeds to the fifth step. The claimant first must bear the burden at step . . . four that the impairment prevents him from performing his past work.").

Notably, in making an RFC finding, "[i]t is well established that the ALJ may not substitute his medical judgment for that of the claimant's physicians."  *Brown v. Comm'r of Soc. Sec.*, No. 1:14-CV-236, 2015 WL 1431521, *7 (W.D. Mich. Mar. 27, 2015) (citing *Meece v. Barnhart*, 192 Fed. App'x 456, 465 (6th Cir. 2006)); *see Simpson v. Comm'r of Soc. Sec.*, 344 Fed. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Charter*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.").  However, the ALJ is not required to base his or her RFC findings entirely on a physician's opinion.  *See Rudd v. Comm'r of Soc. Sec.*, 531 Fed. App'x 719, 728 (6th Cir. 2013) (quoting SSR-96-5p) ("[T]o require the ALJ to base her RFC finding on a physician's

opinion, 'would, in effect, confer upon the treating source the authority to make the
determination or decision about whether an individual is under a disability, and thus would be an
abdication of the Commissioner's statutory responsibility to determine whether an individual is
disabled.'"); *Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x 149, 157 (6th Cir. 2009) ("[A]n ALJ
does not improperly assume the role of a medical expert by assessing the medical and non-
medical evidence before rendering a residual functional capacity finding."). Ultimately, the ALJ
may base her RFC finding on *all* relevant evidence on record, including an individual's medical
history, reports of daily activity, and recorded observations, for example. SSR 96-8p, 1996 WL
374184, at *5.

> In this case, the ALJ made the following findings in regard to Plaintiff's RFC:
>
> After careful consideration of the entire record, the undersigned finds
> that the claimant has the residual functional capacity to perform
> medium work, as defined in 20 CFR 404.1567(c) and 416.967(c),
> except that he requires the option to alternate between sitting and
> standing (such that sitting is unrestricted, standing is limited to two
> hours at a time, and walking is limited to two hours at a time); and he
> must avoid hazards such as moving machinery or unprotected heights.

ECF No. 8-2 at 26; PageID.57. The ALJ made this RFC determination based on the objective
medical evidence of record. For example, the ALJ noted that the medical evidence shows that
Plaintiff did not have more than "mild degenerative changes" in his left shoulder, and "a small
suprapatellar joint effusion" in his right knee. ECF No. 8-8 at 5; PageID.316 (report by PA
Audrea Williams); ECF No. 8-8 at 26-27; PageID.337-338 (same results reported by Dr. Jeffrey
Shipkey). It also shows that Plaintiff was referred to Physical Therapist (PT) Mark Nylund by
PA Benkley, and that after eight sessions of PT, Plaintiff's shoulder pain went from a two out of
ten to a one out of ten. ECF No. 8-7 at 63, 66, 74-75; PageID.295, 298, 306-307. In addition,

PT Nylund stated that Plaintiff had an "active range of motion" in his left shoulder and that his lower extremities were strong.  ECF No. 8-7 at 63, 74; PageID.295, 306. Plaintiff did not provide any further information related to either his knee or shoulder pain.  Overall, the ALJ's RFC determination is supported by substantial evidence within the record.  *Jones*, 336 F.3d at 475 (noting the ALJ's decision cannot be overturned if sufficient evidence supports the decision regardless of whether evidence also supports a contradictory conclusion).

Nonetheless, Plaintiff claims that the ALJ should have either ordered additional testing or re-contacted PA Benkley before making the RFC finding in this case.  ECF No. 11 at 9; PageID.391 (citing *Lashley.*, 708 F.2d at 1051 (noting the ALJ has the "basic obligation to develop a full and fair record.")).[3]  An ALJ is never *required* to re-contact a treating physician or to order the claimant to undergo an additional consultative examination.  Rather, the regulations clearly state that if there is insufficient evidence to determine if a claimant is disabled, then the ALJ "*may* recontact your treating physician . . . or other medical source. [Or] [w]e *may* ask you to undergo a consultative examination."  20 C.F.R. § 404.1520b(c)(1), (3).  Here, the ALJ did not abuse her discretion by deciding that there was sufficient evidence of record upon which to make an RFC finding (which made it unnecessary to reach out to PA Benkley or request an additional exam).  *See Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (noting the ALJ has discretion to decide whether additional medical evidence is needed and will be paid for at the government's expense).

---

[3]It should be noted that the *Lashley* citation Plaintiff includes in his brief is misleading.  The quote cited by Plaintiff is the *Lashley* court's paraphrasing of an ALJ's duties for compiling a record in cases with unrepresented plaintiffs according to the Fifth Circuit.  *Lashley*, 708 F.2d at 1051 (citing *McConnell v. Schweiker*, 655 F.2d 604, 606 (5th Cir. 1981)). The *Lashley* court ultimately stated that "[t]here is no bright line test for determining when the administrative law judge has . . . failed to fully develop the record." *Id.* at 1052.

In addition, it should be noted that while Plaintiff claims that PA Benkley is his treating physician, physician assistants are not considered to be acceptable medical sources under the regulations.  *See* 20 C.F.R. § 404.1513(a).  Rather, physician assistants are "other sources." 20 C.F.R. § 404.1513(d)(1).  Consequently, even if the ALJ did re-contact PA Benkley to obtain his RFC assessment of Plaintiff, the ALJ would not need to afford any special deference to that opinion or have to provide "good reasons" for not adopting his findings.  *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) ("The regulation requires the agency to 'give good reasons' for not giving weight to a treating physician in the context of a disability determination.") (quoting 20 C.F.R. § 404.1527(d)(2)).

Overall, there is substantial evidence in the record to support the ALJ's RFC finding in this case. *Foster*, 279 F.3d at 353 (noting it is Plaintiff's burden to show he is disabled).  Moreover, the ALJ did not abuse her discretion by deciding not to request further medical examinations before making her RFC finding.  *See Rudd*, 531 Fed. App'x at 728 (quoting SSR-96-5p) (requiring that an ALJ base her RFC finding on a physician's opinion would mean that the physician would be determining whether a person is disabled rather than the Commissioner).  Therefore, Plaintiff's request to remand the case for further development of the record is denied, meaning his first claim fails.

Plaintiff  next claims that the ALJ's determination that Plaintiff was less than fully credible is not supported by substantial evidence.  ECF No. 11 at 10-13; PageID.392-395. Specifically, Plaintiff contests the ALJ's statement that the "intensity, persistence and limiting effects of his symptoms" were not entirely credible.  ECF No. 11 at 11; PageID.393.

When an ALJ evaluates an individual's complaints of pain and disabling

symptoms, the ALJ may consider the credibility of the person.  *Walters v. Comm'r of Soc. Sec'y*, 127 F.3d 525, 531 (6th Cir. 1997).  "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."  *Id.* (citing *Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987)).  An ALJ's determination of a Plaintiff's credibility must be supported by substantial evidence.  *Id.*; *Winslow*, 566 Fed. App'x at 422. Simply stating that Plaintiff has pain or other symptoms is not sufficient to establish that the individual is disabled.  *Walters*, 127 F.3d at 531 (citing 20 C.F.R. § 404.1529(a)).  The ALJ must assess an individual's pain by using a two prong test:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Id.* (citing *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994) and quoting *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)); *see also* 20 C.F.R. § 404.1529(a). "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence."  *Walters*, 127 F.3d at 531 (citing *Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1227 (6th Cir. 1988)).  An ALJ can also consider an individual's ability to do household and social activities when assessing the credibility of a person's alleged pain and disabling symptoms.  *Walters*, 127 F.3d at 532.

        In determining that Plaintiff's allegations of pain and disabling symptoms were less than credible, the ALJ identified several inconsistencies between Plaintiff's testimony and

the evidence provided.  In so doing, the ALJ first evaluated and considered Plaintiff's testimony :

> The claimant has alleged disability due to type II diabetes, arthritis/osteoarthritis, a left shoulder problem, and a right knee problem.  He has complained of dizzy spells, blackouts, trouble sleeping, shortness of breath, chest pain, and numbness in his hands.  He has alleged difficulties with the following: lifting, standing, walking, and stair climbing.  He testified that he can sit for about a one-and-a-half hours at a time, walk a mile at a time, and lift and carry about fifteen pounds.

ECF No. 8-2 at 27; PageID.58 (citations omitted).  Despite Plaintiff's abovementioned allegations, the ALJ determined that Plaintiff's testimony regarding his pain and disabling symptoms was not credible:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause symptoms of the types alleged.  However, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.
>
> The record documents [show] that the claimant has degenerative changes of the left shoulder and medial joint space narrowing in the right knee.  On January 10, 2014, x-rays of the claimant's left shoulder showed degenerative changes and x-rays of the right knee showed medial joint space narrowing.
>
> However, the degenerative changes of the left shoulder and the medial joint space narrowing of the right knee have not caused the claimant significant symptoms or limitations.  The x-rays of the left shoulder demonstrated no acute fracture or dislocation, and there were only mild degenerative changes with slight irregularity of the glenoid and hypertrophic change of the acromioclavicular (AC) joint.  Also, the x-rays of the right shoulder demonstrated no acute fracture or dislocation, no patellar tilt or subluxation, a small suprapatellar joint effusion, and a "[v]ery slight" medial joint space narrowing.  In May 2013, the claimant underwent physical therapy for left shoulder impingement and pain.  On May 1, 2013, the claimant rated his left shoulder pain at 2/10.  After eight sessions of physical therapy, on May 22, 2013, he rated his left shoulder pain at 1/10.  The physical

therapist noted that the claimant's range of motion of the left shoulder was within functional limits, he had good strength in the bilateral lower extremities and the left shoulder, and he had good balance with ambulation. The record does not document any other significant treatment for his left shoulder or his right knee.

In addition, the record documents that the claimant has diabetes mellitus. Treating doctors have diagnosed him with diabetes and he has been treated with medication, including insulin. On June 28, 2012, he had a hemoglobin A1c of 12 and on December 13, 2013, he had a hemoglobin A1c of 14.

However, the claimant has been significantly non-compliant with his diabetes treatment. For example, on December 18, 2012, the treating doctor reported that the claimant's blood sugar was high secondary to medication non-compliance. On November 5, 2013, he reported that he had not been checking his blood sugar levels and his meter broke about a month ago. On January 10, 2014, the claimant was admitted to the hospital with an elevated blood sugar level. He reported that he did not have breakfast that day and had not taken his medications for the day. On January 11, 2014, the date of discharge, the treating doctor reported that Accu-Cheks were performed and they were within a reasonable range, " . . . so it was determined that patient apparently does not follow a close diabetic diet at home."

The record also suggests that the claimant's diabetes is controlled when he is compliant with his treatment regimen. On January 11, 2014, after being treated in the hospital, his blood sugar level was 129. He testified that his blood sugar levels have been in the 100-200 range.

Furthermore, the record documents that the claimant has hypertension. A treating doctor has diagnosed him with hypertension and he has been treated [by] him with medication. Nevertheless, the record does not document any end-organ damage or significant symptoms or limitations due to the hypertension. Also, on August 16, 2013, the claimant had a normal stress test and electrocardiogram (ECG) and on January 10, 2014, he again had a normal ECG.

Moreover, the claimant's reported activities suggest an adequate level of functioning. He has admitted that he has no problems with his personal care; lives alone; prepares meals; does household chores (laundry, cleaning, and dishes); travels by walking; goes shopping in

stores; watches television; and attends church and a weekly bible study.  Additionally, he continues to deliver newspapers part time. He delivers the papers once a week and walks about two hours while delivering them.

The claimant also stopped working for reasons unrelated to his alleged impairments.  He testified that he stopped working in Arizona due to being laid off for business-related reasons rather than his alleged impairments.   No treating or examining physician has reported that the claimant has restrictions greater than found in this decision.

ECF No. 8-2 at 27-28; PageID.58-59 (citations omitted).  The ALJ's assessment of Plaintiff's pain and disabling symptoms is thorough and complete, and there is substantial evidence to support the ALJ's conclusion that Plaintiff's allegations were inconsistent with the medical evidence on record. *See Jones*, 336 F.3d at 475 (noting ALJ's decision should be affirmed if there is substantial evidence to support it regardless of whether evidence supports a contradictory conclusion). For example, the ALJ noted that Plaintiff *testified* that he followed his diabetic regime at home (ECF No. 8-2 at 45; PageID.76), but his *medical records* clearly state that he does not follow a close diabetic diet at home (ECF No. 8-8 at 2; PageID.313).  In addition, Plaintiff testified that his shoulder bothers him (ECF No. 8-2 at 44; PageID.75), but in his physical therapist's notes, Plaintiff's shoulder pain was only a one out of ten on the pain scale (ECF No. 8-7 at 66, 74-75; PageID. 298, 306-307).  Overall, the ALJ's opinion in regard to Plaintiff's credibility is supported by substantial evidence.

Nonetheless, Plaintiff argues that the ALJ committed reversible error by failing to consider Plaintiff's financial status and his broken meter as possible reasons for not complying with his diabetic regimen.  ECF No. 11 at 12-13; PageID.394-395 (quoting *Warren v. Comm'r of Soc. Sec.*, No. 13-15230, 2015 WL 1245936, at *12 (E.D. Mich. Feb. 18, 2015) (citing SSR 82-

-14-

59) ("[B]efore using noncompliance with medical treatment to discredit or deny a claim, the ALJ is obligated to determine whether there is 'justifiable cause' for the noncompliance.")).

Under the regulations, the ALJ "must not draw inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7p, at *7. However, "[s]ocial security regulations make pellucid that the claimant bears the burden of demonstrating good reasons for her failure to follow prescribed treatment. 'If you do not follow the prescribed treatment without good reason, we will not find you disabled.'" *Martin v. Comm'r of Soc. Sec.*, No. 1:13-CV-1254, 2015 WL 518595, at *7 (W.D. Mich. Feb. 9, 2015) (quoting 20 C.F.R. § 404.1530(b)); *see Sias v. Sec'y of Health & Human Servs.*, 461 F.2d 475, 480 (6th Cir. 1988) ("The Social Security Act did not repeal the principle of individual responsibility."). A claimant's failure to follow treatment plans "is evidence supporting an ALJ's factual finding that the claimant's testimony was not fully credible." *Martin*, 2015 WL 518595, at *7.

Here, Plaintiff's allegation that he could not afford to follow his diabetic regimen after his insulin meter broke is not persuasive. ECF No. 11 at 12; PageID.394. This is because Plaintiff's medical records show that on the day he was admitted to the hospital due to diabetic complications, he admitted that his meter broke a month ago and that he bought another one at the pharmacy that day (after experiencing complications). ECF No. 8-8 at 36; PageID.347. Based on this information, it is clear that Plaintiff had resources available to him to comply with his treatment plan, but he only did so after experiencing problems as a result of his

noncompliance with his diabetic regimen.  ECF No. 8-8 at 36; PageID.347.  As a result, Plaintiff

has not provided "good reasons" for not complying with his diabetic regimen.  *See Moore*, 573

Fed. App'x at 543; *see also Martin*, 2015 WL 518595, at *7 ("It was appropriate for the ALJ to

draw an adverse inference from plaintiff's failure to follow medical advice.").  Therefore,

Plaintiff's second claim fails.

Plaintiff's final claim is that the ALJ's Step 4 finding was improper because it is

not supported by the evidence of record.  ECF No. 11 at 13-14; PageID.395-396.  Specifically,

Plaintiff claims that (1) he "should have been found disabled pursuant to Medical-Vocational

Rule 202.04" (ECF No. 11 at 13), and (2) the ALJ erred by relying on the vocational expert's

"testimony in response to an incomplete hypothetical question."  ECF No. 11 at 13; PageID.395.

At Step Four, the ALJ compares "the physical demands of the claimant's past

relevant work with [his] present mental and physical capacity."  *Walters*, 127 F.3d at 529

(quoting *Veal v. Bowen*, 833 F.2d 693, 697 (7th Cir. 1987)).  Plaintiff still bears the burden of

establishing he is disabled at Step Four.  *Walters*, 127 F.3d at 529 ("[D]uring the first four steps,

the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.").

As a result, the Commissioner's denial of Plaintiff's claim at Step Four is proper as long as

"substantial evidence in the record . . . support[s] the conclusion that [Plaintiff] could perform his

past relevant work and had therefore failed to make a prima facie case of being under a

disability." *Walters*, 127 F.3d at 529 (citing *Young v. Sec'y of Health & Human Servs.*, 925 F.2d

146, 148 (6th Cir. 1990)).

In this case, the ALJ determined that based on his RFC, Plaintiff could perform

his past relevant work as a stock clerk.  ECF No. 8-2 at 29; PageID.60.  This determination is

supported by substantial evidence within the record.  For example, the ALJ noted the evidence in the record showing that Plaintiff's diabetes is controlled as long as he complies with his diabetic regimen. ECF No. 8-2 at 28; PageID.59 ("The record also suggests that the claimant's diabetes is controlled when he is compliant with his treatment regimen); ECF No. 8-8 at 2; PageID.313 (noting Plaintiff did not follow his diabetic regimen at home).  In addition, the medical evidence supports the ALJ's conclusion that Plaintiff's complaints of left shoulder and right knee pain were not so severe that he would be incapable of lifting items within the medium range. *See, e.g.,* ECF No. 8-2 at 27-28; PageID.58-59; ECF No. 8-7 at 74; PageID.306 (noting Plaintiff's shoulder pain was only a one out of ten after eight sessions of physical therapy, and that he had good strength in his lower extremities); ECF No. 8-8 at 5; PageID.316 (noting Plaintiff did not have a fracture or dislocation of his shoulder or knee).  In fact, none of the medical opinions of record indicate that Plaintiff should not lift this amount of weight.  Finally, Plaintiff's description of his daily activities (which includes delivering 125 newspapers), does not contradict the ALJ's finding that Plaintiff could perform his past work as a stock clerk.  *See* ECF No. 8-2 at 48; PageID.79.  Therefore, there is substantial evidence in the record to support the ALJ's conclusion that Plaintiff can perform his past relevant work.

Nonetheless, Plaintiff claims that he should have been found disabled under Medical-Vocational Guideline ("Grid") 202.04.  However, as the Commissioner correctly stated in his brief,  the Grids are not applied until Step Five. *Fetters v. Comm'r of Soc. Sec.*, 160 Fed. App'x 462, 463 (6th Cir. 2005) ("Use of the Grids is not required at step four of the five-step sequential process . . . for evaluating disabilities.").  Since this case was decided at Step Four, there was no need for the ALJ to apply or use the Grids. Therefore, this argument is fails.

-17-

In regard to Plaintiff's second argument, (that the ALJ improperly relied on the vocational expert's answer to an incomplete hypothetical), this assertion also fails. Plaintiff claims that because the ALJ's RFC finding was improper, his hypothetical questions to the vocational expert were incomplete (rendering the vocational expert's answers unreliable).  ECF No. 11 at 13; PageID.395.  However, this Court previously determined that the ALJ's RFC finding is supported by substantial evidence.  As a result, this argument is not persuasive, and Plaintiff's final claim fails.

Accordingly, the decision of the Commissioner is **AFFIRMED** and Plaintiff's request for relief is **DENIED**.

Dated: 2/19/2016

_____/s/ *Timothy P. Greeley*_____
HON. TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE